We'll proceed with the day calendar for today. The first case is the United States v. Feldman. Good morning, your honors. May it please the court. I'm here before you today simply to ask that this court address and correct a serious error. This doesn't require this court to establish new precedent or extend existing precedent in a manner that hadn't been before. All we're asking is for this court to apply established Second Circuit precedent to protect Dr. Feldman and his family and to accommodate the expectations that the parties had in the lower court. It's as simple as that. We asked this same request of . . . Had you disclosed the full extent of Feldman's assets to the United States attorney at the time of the negotiations that led to the the plea bargain and the agreement and the and the position taken by the United States attorney with respect to the recommendation to the forfeiture authority? So the government was well aware of the of the million three pension . . . Yes. Yes, yes, your honor. The attorney in the lower court did provide that information. It was in the PSR. No, no. And earlier. That's long afterwards. I'm talking about at the time . . . Yes. At the time that there was an agreement to forfeit the forfeiture and the government's position taking the position that it would recommend restoration of the forfeiture to the victim. Correct. The assets were disclosed during the government's investigation. I will note that the assistant U.S. attorney on the case and some of the investigators sent in affidavits and I believe they're part of the record in the case indicating that they don't recall these assets but we know that they were established. They were provided and what we had asked for in the lower court was a hearing on this and the ability to do discovery because the attorney and the client have said that indeed all of those assets were established, provided and researched by the agents that were investigating the case. This case also involved . . . Are you telling me that's a disputed fact as far as you're aware the government does not agree with that? I believe that the government has accepted that as a fact but they may . . . I don't know what they would say in a hearing because we never had a hearing. They had initially rejected or denied it but then we showed them the information about the interviews and subpoenas to the financial advisor that was handling the pension plan. So the investigators clearly were aware of it at the time during that investigation. Are you suggesting that Mr. Resnick and the government were offering to make the recommendation to justice and then when it was ultimately rejected because of these other assets that the government was acting in bad faith? Mr. Resnick was acting in bad faith? No, Your Honor. If not, I don't know how you win. Oh, I don't believe . . . Mr. Resnick, I believe and again we want to have his testimony but I believe he fully expected. I don't deny that he expected that the forfeited funds would be restored to the victim. Were you complaining about the fact that when the request was made by the second attorney, whoever it was, I forget her name, which was made and then she followed up with a disclosure of these other assets which scotched the approval by DOJ, that that was done in bad faith when she disclosed that information? We wonder why she did that because clearly . . . Isn't she under an obligation to do that? I mean, don't they have to operate on full information? But they had . . . the information about those accounts was in the pre-sentence report. She did not attach the PSR to the . . . Yes, but you know, this is . . . to the point is, if she had put what she later learned, I mean, she explained she just wasn't aware of it. She should have been aware of it, but if she had put it in the original letter of recommendation, the result would have been the same. I don't believe so, Your Honor. It said, you know, we recommend that they be restored, but you must be aware the defendant's got a million three in his pension account. The answer would have been the same, but just earlier. So that really doesn't seem to me to play any significant role in . . . No, no. If I may, if that were the case before with Mr. Resnick, then he . . . then the promise was empty. What you'd be saying is the promise was empty, that there was no expectation, that everybody knew, but everybody relied on that. To me, the strongest statement of your position is that the government was under obligation to know the government's own rules. If the government's own rules are, as the forfeiture unit later explained, that if you have additional assets, the forfeiture is not going to be restored because forfeiture is for the victim's benefit, not for the defendant's benefit. If those are the rules, then it seems to me the government was perhaps unintentionally misleading in offering you a hope that the forfeiture would be restored to the victim. We don't believe that the manual is a preclusion for that. It says, should not, should not, and we believe there are times when, in fact, it should not be restored if there are other assets, should not be restored if there's other assets. Here, they knew the circumstances of the case. If that were the fact that they couldn't do that, then the judgment in this case is incorrect because the judgment says that . . . Can you please, when a judge tries to ask you a question, stop talking and listen? Yes, Your Honor. The point of view is to convince us, is that right? Yes. You're not going to convince us by talking over us. My apologies. Did the AUSA explain to you that the manual says they should not be restored in those circumstances? I was not counsel of record at the lower level. To your predecessor. Did he explain to your predecessor? We were trying to get testimony of the AUSA and my predecessor in the case in the record, and we were denied a hearing and we were denied discovery on that, so we could not explore those issues. My predecessor wrote a statement here on the writ of execution that addressed that and said, this is my expectation, this is my understanding, and it's unjust, same position we're taking here. The court, in its judgment, reiterated that expectation that they may use the forfeited funds to pay restoration. If that weren't allowed, then the prosecutor, the defense counsel, and the court, all were under an erroneous understanding of what was going to happen. Let me ask you a couple of questions. First is, what's the remedy? If we find that the plea agreement was breached by basically withdrawing the recommendation in the later letter from Carducci down to Maine Justice, right, where she identifies the assets to him, and I think pretty clear in that letter, she's sending a message not to restore, right? What's the remedy? What do we do? Do we order that the funds that were forfeited be applied to restitution? Do we invalidate the plea agreement and the plea? What do we do if we agree with you on the breach of the plea agreement? We requested different alternative remedies in the lower court. Either deny the writ of execution, or vacate the order of forfeiture, or any other avenue that the court deems appropriate . . . The writ of execution would be of no help because it's the execution on the restitution. It wouldn't work the complete remedy that you're looking for, right? You want to get . . .  . . . toward the restitution of the forfeited funds that have already been forfeited and paid. That's really the primary . . . Our first request would be to get the parties back to that area where that was their expectation. It seems like Maine Justice has to approve restoration. Can we say to Maine Justice, it doesn't matter about this recommendation anymore. We believe there was a breach of the plea agreement. We're ordering you to use the forfeited funds as to restitution. Can we do that? I believe you can, Your Honor. I know they have discretion, but they use that discretion to make their promise. What's the authority? I'm saying, is there any kind of statute or regulation that says that we can overrule a decision of this branch of Maine Justice on whether to restore funds? I believe the court could use its supervisory power to say, all we're asking for is enforce your promise. Keep your promise that you made. We normally don't urge. We order. What would the order be? What would the directive be from this court? The directive under that avenue. What would you like us to do? Maybe for the first time, you might think about that. Oh, we've thought about it a very hard time. What you would like us to do? If you were going to write the order that we were going to issue, what would you say? I would say that you would remand the case back to the district court for the court to use its supervisory powers to enforce an order that says that the parties are going to be put into a position that reflected their expectations. If that determination . . . Let me follow up on Judge Walker though. The agreement in the plea agreement was to recommend. It was never more than a recommendation. Even at the sentencing, the assistant U.S. attorney said, all right, I promise I'm going to recommend that they restore these funds. So what do we do? Tell them to recommend it again? What's going to happen? I mean, what's going to happen to your client? I think they should be compelled to make a meaningful recommendation. If that recommendation is meaningful, it would go back and change what was submitted to Athmos and then they . . . First of all, you suggested that the prosecutor conceal from Maine Justice the $1.3 million, but now that cat is out of the bag. So now they're going to go back and make a recommendation to Maine Justice to forfeit out of the original money that was a little under a million that was set aside, that that should be the restitution, and then ask Justice to forget about the money that's the $1.3 million disregarded? What . . . Oh, I think if they give the $1 million that's sitting there now in forfeiture to the university, that ends it. Dr. Feldman paid the rest. So they would be made whole. That's not my point. My point is, with regard to the $1.3 million, would you have the district judge recommend that that money not be used, not be considered, or would you have . . . I mean, what can they do? This is following up on Judge Droney's point. I'm not sure I understand what $1.3 million. Isn't that the amount that was in the pension, the separate money? But they can . . . Right. You're saying with regard to the amount that they . . . That genie is out of the bottle now. It can't be . . . It has to . . . It's been disclosed, and so Justice knows about that. Oh, I see what you're . . . Okay. Justice can . . . In our view, Justice can allow for restoration in circumstances where the defendant has additional funds. The language in the manual is should . . . They have discretion. They have guidelines and policies, but they have discretion. But where does that leave you? They will exercise their discretion, and you and I can sit here and wonder about how they might exercise that discretion, but I just don't know whether this is all a waste of time. It seems to me perhaps a better answer or something of an answer to the questions that my colleagues have been putting you is the heart of your complaint, it seems to me, is something a little different from the way you've been presenting it. The heart of your complaint is that if the Justice Department guidelines will not . . . It's not that they won't ever in any circumstances permit it, but they say should not . . . Money should not be restored when the defendant has extra money to be used to pay the restitution and to make the victim whole. It seems to me the best statement of your complaint is that you were misled, not intentionally. You were unintentionally misled by a U.S. attorney who apparently was unfamiliar with those guidelines, who either should have known before suggesting a likelihood that the forfeiture would be restored, or in any event, they should not have in the circumstances led you to believe that there was a good likelihood of restoration when the rules that were in effect say this should not happen. One approach that you might hope for is that the plea bargain in which you consented to the full forfeiture could be withdrawn and revised, and the district court could reconsider the issue of the forfeiture, because as my colleagues were pointing out, the avenues that you're arguing are not likely to lead anywhere because the Justice Department said no, these are the rules. We didn't agree . . . we never agreed to restore the money. And I appreciate that, Your Honor, and that is an avenue that we would like to have addressed, vacating the forfeiture order in the case, because this was a pre-indictment plea. You, of course, would need to use the 1.3 pension fund for the restitution. You don't get to keep the pension fund and not have the forfeiture. What I'm saying presupposes that you're going to make the victim whole by resource to the assets that you have. The forfeited funds that would be vacated are not the pension fund. They're separate accounts that they would make the victim whole. You make the victim whole with the money that you have. That's, for the moment, that's the pension funds. You make the victim whole in some fashion. Well, the victim is made whole. The forfeiture, the three accounts that were forfeited, had already been seized by the government. And then he wrote a check for the difference. But as to the amount over and above the check that you wrote, the victim hasn't gotten that. It's with the government, right. It's sitting with the government in the forfeiture fund. Either with the government or it's in your client's pension fund. Correct. And if the forfeiture account is vacated, then that money, that seized money, we certainly agree that that money should go to the victim. And we've always anticipated that it would. But if it isn't vacated, then that's the dilemma we're in now. So you're saying you shouldn't have to make the victim whole? The victim should be made whole. All right. In any event. And who's going to make the victim whole if the forfeited funds are not vacated? That money would have to... The government would do a writ of execution, as it did, and get that money from the Feldmans. That's what the consequences are. I thought you were after the... So your client actually paid... First of all, your client, let's be very clear, this was a joint and several liability, and he paid all of the liability, correct, for all the defendants? Yes. Right. And so he wrote a check for some $400,000, correct?  And then the rest of it was the million, or just under a million, $995,000, that was forfeited, that you wanted restored for the... to be restitution. Yes. And then in addition, there's the $1.3 million, which is in the pension fund, right? Yes. Okay. So the government has asked that the second item, the $995,000, be used for restitution. They recommended that, but then included the other money in an addendum that followed later on and mentioned that to them. And then they exercised their policy not to have the restitution come out of the forfeiture. So what you would like, presumably, is to have the restitution come out of the forfeiture... Yes. ...as was discussed, and then the pension fund is released back to your client. That's what you would like. Exactly, Your Honor. Okay, thank you, Mr. Andriaus. Thank you. We'll hear from you on rebuttal. We'll hear from the government now. Ms. Lee. Good morning, Your Honors. May it please the Court, my name is Tiffany Lee, and I represent the United States. Judge LaValle, I think you have the crux of why we're here. The only reason why we're here is because Dr. Feldman does not want to pay out of his own pot this money. Well, but... I'd like to start with the question I opened to your adversary, which is, did you... did the doctor disclose to you his additional funds before the deal was made, before the agreement was made, that he would consent to a forfeiture of a million dollars, and you and the government would recommend to the forfeiture authority and DOJ that it be restored to the victim. Were you aware of the additional funds? Your Honor, in the record at Appendix 310, there's an email correspondence that was received by AUSA Richard Resnick, and it was from the lead case agent, James Taylor, who was with IRS at the time. And in it, Special Agent Taylor basically says, listen, I reviewed the attachments, specifically the other asset types, meaning the retirement plans. He says, these assets do not look familiar to me. I do not recall them during my time spent on the investigation or during Feldman's plea negotiations and sentencing. What is the relationship of that email to the plea agreement? This is basically post... I think this email came as this discussion was after Assistant U.S. Attorney Kevin Robinson instituted the writ. So this is well after the plea. Well after plea, well after sentencing. But it's for sure that at the time of the sentencing that the PSR had been received, and the PSR listed all these additional funds. It didn't list the fidelity funds because they had already been exhausted, and the final order of forfeiture had entered, including the check he gave for $400,000. So that's gone. That's why it's not listed in the PSR. But all of these funds are in the PSR. And Mr. Resnick, at the sentencing, said we are going to ask that a hundred percent of it be applied toward the restitution amount. That's the forfeiture. That's page 125. So that was the promise that was made at the sentencing. Maybe it's after the time the plea agreement was signed and reviewed by the magistrate judge, but it's certainly at the time of the plea that was the promise. I know that the plea agreement says we may make that recommendation. But at the time of the sentencing, the assistant U.S. attorney said we will. Do you agree with that? I agree with that, and I agree, and Judge Joni, I would kind of disagree with the characterization of the second letter that AUSA Carducci sent. Because in it, she said, listen, I have an obligation. I have to disclose to you these funds. And she said, this is after the sentencing where Resnick says, I promise we're going to make the recommendation. She makes the recommendation. And then August 7, 2015, she says, here are additional assets that we didn't know about and we believe that below addendum is vital to the determination of our recommendation. How could it be vital if it's not to reject the recommendation? But it's not a rescinding, it's not taking away. She's not saying, listen, I do not believe that these victims are not entitled to a single penny. And that's where we're being led here because the whole process Let me read you the sentence. This is after the recommendation was made. Apparently Carducci didn't know about the PSR at the time of the sentencing. We believe the below addendum is vital to the determination of our request, and the request was to use the as the additional assets may provide recourse reasonably available to other assets from which the victim may obtain compensation for its loss in this matter. The below addendum is vital to the determination of our request. How could it be vital other than to deny it? No, I disagree. I think it's just vital to the obligation that the government has in order to let DOJ know with respect to what assets are available. From the DOJ standpoint, they're not looking at whether or not from the DOJ standpoint, once that money has been forfeited, which it has by Dr. Feldman, he agreed to the amount of forfeiture and he also agreed to the amount of restitution Why didn't she file the execution request with the District Court before she got the answer from Maine Justice? That was from our financial litigation person so that was someone else. That was our financial litigation. I agree that the timing was not ideal for the purposes of the case, but the reality is, it's not as if Dr. Feldman there was never a guarantee with this and the interest there was a guarantee that we'd make the recommendation it was always clear that Maine Justice makes the decision but at the sentencing Resnick says we're 100% going to make that recommendation and that's after these additional assets are disclosed in the PSR Page 125, Appendix 125 Yes, but then he says, but it has been provided to counsel many times that there's no guarantee. You know our hands are tied and we have to do what DOJ provides, but we are going to ask that 100% of it be applied toward the restitution amount The interest for restoration and for the victim. It is in the victim's interest. It's not something that we can bargain in order to, so that Dr. Feldman No, but it does matter. Droney's point when she said in her letter we have become aware of additional assets owned by the defendant, what she really meant was, my office has been aware of them all along, but I have just become aware of additional assets Correct. The letter is not written The letter is very deceptive in that regard, but I want to focus on something else which is, I mean I think that the point that the mistakes that she made in her letter and the obvious capacity of the letter to withdraw the recommendation, apart from that, it seems to me that the heart of the case lies in something else, which I've been stressing with your adversary, which is that if it is the policy of the government not to restore forfeitures when the defendant has other assets that can be used to compensate to restore the victim to his prior condition, it seems to me it was quite misleading of the government if the government was aware of the other assets to lead the defendant to believe there was a reasonable hope that the recommendation would be restored without at least saying to the defendant the policy of the asset forfeiture unit is that it shouldn't be done That seems to me to be misleading and if there is a dispute about whether the government was aware of those funds before the defendant consented why shouldn't the district court inquire into that and find out whether the government was aware before the defendant says we disclosed all of this you answer that with an affidavit of an agent who says I don't remember any such thing, but the district court denied discovery and didn't inquire into it. It seems to me that fact is quite crucial because if the defendant didn't tell the government about the other assets, he has himself to blame for having been credulous about the representation but if the government did do it, did know about the other assets, then I don't understand why the government wasn't under an obligation in saying we'll recommend it, but you should know that the policy of asset forfeiture is that it shouldn't be done. I think, your honor with respect to when the government engages in its forfeiture and its plea negotiations, it does explain in terms of the process of what forfeiture entails and that these decisions are made I do not know obviously I am not present Here you've got a situation where Resnick apparently and I may be totally wrong and discovery could reveal some different facts, but Resnick apparently didn't know of the policy of that if there's additional assets that the forfeiture will not that the forfeiture cannot be restored to restitution We don't know what Resnick knew, do we? About the policy We don't know specifically But if Resnick did know about the policy then what Judge LaValle says rings true, right? It was misleading to say we'll recommend because he knew that it wasn't going to work No, I don't see it at all I see it as if you read the recommendation He knew about the 1.3 million extra assets or whatever extra was forfeited, right? At the sentencing Based on the PSR That's not when it matters What matters is whether he knew it at the time that the defendant was induced to agree to the forfeiture relying in part on the hope that the government gave that their recommendation would be accepted But again, when you read the recommendation letter, in the letter it talks about interest to the Everyone understands at that juncture the money is gone The money is gone as to the defendant The money is gone as to anyone who may say I'm an innocent owner of this asset I'm the one who's been harmed All these people can come in through the woodwork to petition for remission or restoration That happens regardless whether there's a restitution order in certain cases That's why the discretion lies with the government Take my facts as a hypothetical The government the representative of the government that is the AUSA on the front lines knows about the defendant's assets. He knows that the defendant has a lot of money in the bank in a pension fund, in whatever form that can be used to make the victim whole He induces the government the defendant obtains the defendant's agreement to a million dollar forfeiture by saying we will recommend to the asset forfeiture unit that the million dollar forfeiture be used to restore the victim He doesn't tell the victim that the asset forfeiture division's guidelines say that shouldn't be done when the defendant has money, independent money that can be used to restore the victim Is that appropriate? In relationship to the victim? No, in relation to the defendant To say to the defendant we will make a recommendation We can't promise it will be accepted, but we think there's a good likelihood it will. But doesn't say the rules by which they work say it shouldn't happen Is that appropriate? To obtain a consent to a million dollar forfeiture when the rules are it shouldn't be done and you don't tell? No, the rules don't say anything about forfeiture. Again, all that we're relating to is the remission restoration process which is in the benefit of the victim So it's not asking Isn't it correct that the forfeiture unit's refusal of restoration was pursuant to a policy of theirs which is set down in black and white It is set down in the evaluation of factors including the policy that should there be funds reasonably available to the victim through other means that the government will not restore or remit That was never conveyed to the defendant early on But with respect to in what purpose would it be conveyed to the defendant Of course it's the total picture It's the likelihood of success when getting the money that had been forfeited restored over to restitution And had the defendant known the truth the negotiations might have been entirely different on the plea agreement No I don't see it as that You got the defendant to pay more than the defendant's share of the fraud The defendant's share of the fraud was about $600,000 but the defendant was required to make restitution about $1.4 million The defendant agreed to do that Yes agreed to it, right, exactly on the basis of what information is the question But the reality is is that everything is in the four corners of the plea agreement There is nothing in there It's not in the four corners of the plea agreement This is justice This is not a commercial contract And I agree with that But the whole point is that the extent of that that the U.S. Attorney's Office can do in the context of remission and restoration is to say ask the Department of Justice this is the information that we have with respect to this defendant You seem to be missing the point of everything that's being said to you The issue that we are focusing on is whether it was misleading not after the forfeiture had been made forget about that, we're talking about at the time that there is negotiation over whether the defendant will consent to a forfeiture And tell me if you see a difference between these two scenarios On scenario one the government says to the defendant as was done, I think, in this case we will make a recommendation that the forfeiture we're suggesting you agree to of a million dollars will be restored to the victim so that you will no longer need to pay another million dollars in restitution That's scenario one Scenario two is the government says to the victim we will recommend that the forfeiture forfeited funds of a million dollars be restored, but forget about it because the rules say this shouldn't happen and it's very unlikely that the asset forfeiture people will agree to do it although they lawfully may do so it's quite unlikely because their guidelines say this shouldn't happen Is there a difference between those two scenarios in the likelihood of the defendant agreeing to forfeit a million dollars? Do you see any difference? I see the difference in terms of the negotiation tactics, but there could still be interest for the defendant to forfeit knowing all that information You do see a difference, so explain to me what's the difference between those two scenarios with respect to the likelihood that the victim will agree to the forfeiture How are they different? I think the likelihood is because of the fact that they understand the calculus if they disclose what all their assets are at the time that they may be required to pay, despite the fact that the government has a certain amount of assets, that restoration is unlikely and that independently they would have to cut a larger check We have a dispute a factual dispute about exactly what was said and what was known and it might make a big difference whether the government did or didn't know whether the defendant had or had not disclosed to the government the existence of these additional assets of the pension fund at the time that the defendant agreed to the million dollar forfeiture Am I correct that there's a factual dispute about that? It appears just based on your honor's question that this court perceives there to be a factual dispute What do you mean this court perceives? I'm asking you is there a factual dispute? The defendant says we told the government about the extra million Do you agree with that? I agree that there is a dispute with respect to that fact Then shouldn't we find out what the facts are because they could be pretty important Your honor Your honor at the end of the day basically I don't think the issue on the fact finding was necessarily based on that as much as it was based on the breach of the plea agreement and based on the recommendation that was in essence made by Should we remand to the district court to find out whether the defendant had told the government about his extra assets before he agreed to the million dollar forfeiture In terms of at the time of the plea negotiation whether the government had been advised by the defendant I guess if that's being the question that's being asked I don't have evidence of it and I guess a remand would be required under the circumstances Thank you Ms. Lee We've got two minutes left for Mr. Andreazzi Thank you your honor Just to address two points First of all with respect to the Carducci, Ms. Carducci's letter One point to make on that in the context of the discussion is that the government makes much of the point that Ms. Carducci says in the letter that says it's vital that you have you know of these assets but then says in a cut and paste we think happened at the end says the same thing she said in the original recommendation was therefore we recommend restoration well if it's the policy of the government that in no events can they recommend restoration if the person has money then Ms. Carducci who's a forfeiture lawyer for the government who knows presumably the policy should have said therefore in no case can there be restoration here but she still said restore now she said that but then promptly thereafter within a month they did their writ of execution to take Dr. Feldman's pension plan without restoring the money I thought that was a different department at the U.S. Attorney's Office not Carducci but yet another lawyer that wrote the letter? No that tried to seize that seized the other money or executed a writ of attachment on the pension fund I think Mr. Robinson who was the lawyer that I met I think he's with the forfeiture unit I'm pretty sure they're all you've got three different lawyers neither of whom knows the full picture that's part of the source of this problem and then one very quick point with respect to the plea agreement I think your honor mentioned that the plea would have gone or may have gone differently had they known that they couldn't do this in forfeiture that is a key point here because this was written on whole cloth before any indictment because of that they could easily have said keep the seized money don't forfeit it so does he want to withdraw his plea? or just adjust it to adjust it to reflect the expectations of the parties he doesn't want to be resentenced on his incarceration period supervised release just the restoration it's just restoration he served his sentence thank you we have another question my understanding is a little different it seemed to me that if if the government knew about the funds before at the time that the government was representing that it would recommend restoration it seems to me what you should be asking for and what perhaps is the potential avenue to fix things is that to withdraw the consent to the million dollar forfeiture and have the issue of the amount of the forfeiture remain undecided so that the forfeiture pursuant to the consent would be revoked and you could either reach an agreement as to what should be forfeited or the court would decide it the way it would have happened if there had been no agreement with respect to forfeiture does that make sense I think that I think that does make sense I'd have to think it through more but I believe that that would make sense it would be remanded dependent on whether the defendant had disclosed the extra assets to the government because if the defendant hadn't disclosed the extra assets to the government at the time that the defendant received the government's promise to make a recommendation then it's the defendant's fault for not having revealed those assets and he can't complain about anyone but himself exactly and our position is that he did let them know that and that's why they knew that he could write a check for the difference he was a doctor, he had a house, he had a but I know that's not before you, we would have to go back and develop that in discovery and at a hearing thank you